THE GEORGIA PACIFIC RAILWAY COMPANY *vs.* MAPP.

Where one causes injury to himself he cannot recover. If he can avoid the accident which results in his injury, it is his duty to do so. Where he causes it, there is clearly no case of contributory negligence and no right to any recovery.

(a) In this case, the evidence shows that the accident resulted solely from the negligence of the defendant in error.

April 18, 1888.

Railroads.   Damages.   Negligence.   Before Judge MARSHALL J. CLARKE.   Fulton superior court.. October term, 1887.

David Mapp brought his action for damages for personal injuries against the Georgia Pacific Railway Company, alleging, in brief, that as an employé of the Atlanta Gas-Light Company, he was engaged in unloading coal from cars on a private side-track of the gas company at its yard, and that a train of cars propelled by an engine of the defendant, running at an unusual and unlawful speed, and without ringing the bell or other precautionary signals, carelessly ran into the cars attached to the one he was so unloading, and the one which he was at that time engaged in pushing, seriously injuring him.

The evidence introduced on the trial was directly con-

flicting on every material point in the case. The plaintiff, by his own testimony and that of several other witnesses (who were either engaged at work with him at the time, or were in the neighborhood and saw the injury occur), showed that he was at work on a short side-track in very close proximity to the coal-house of the gas company; that there were eight cars on the track and they had been there the whole day, it being about 3 o'clock in the afternoon when the collision occurred; that seven cars had been unloaded, but the other not being in a good position for unloading, it was desirable to move it, and in order to do so it was necessary to uncouple it from the next car, and to do this it was necessary to push the next car closer to it; that this would have moved the car towards the center of the city and towards Foundry street, the track being located between Foundry and Thurmond streets, the latter being next beyond Foundry from the heart of the city; that none of the cars had been moved during the day, and this was the first effort to do so; that the plaintiff had got down from the car and had told others, who were immediately under his employment, to get down and help him, and then he put his crowbar under the wheel of the empty car with a view to pinching it towards the loaded one, but before he could move it at all the injury occurred; that it was caused by a collision between a train of cars, run by defendant's engine on the track next adjoining, of the Western and Atlantic Railroad, and the farther end of the train of cars the plaintiff had been unloading; that the defendant's train was being pushed (not pulled) by its engine behind, and was moving towards the center of the city at a speed of six to eight miles an hour; that it had just crossed Thurmond moving towards Foundry street, they being about 200 yards apart, and the end of the switch of the private side-track nearest Thurmond street being about twenty or thirty feet therefrom; that the speed of the train was not checked and no bell was rung or whistle blown, and no signal of any kind given,

except (one witness stated) that there was a man about midway on the top of the end car who halloed and waved his hand; and that the force of the collision was so great as to knock the trucks of three or four cars across the track, breaking down two or three of the posts of the coal-shed, and driving the crowbar with which plaintiff was working into his thigh to and along the bone, making a terrible wound and otherwise bruising and injuring him.

There was some conflict between the testimony of the plaintiff's witnesses as to the use which had been made during the day of the track on which defendant's train was running, some stating that there had been no train that day on that particular track, others that trains had passed there; but as to the other facts stated, his witnesses substantially agreed.

The defendant introduced its then yardmaster, the engineer, fireman and conductor of its train, its switchman, the assistant yardmaster of the Western and Atlantic Railroad and others. It showed that its train started from its yard, a very short distance beyond Thurmond street, on a heavy up-grade, towards the gas works; that when the collision occurred, it had run only a few yards and had not and could not have attained a speed of more than three miles an hour; that its switchman had been sent ahead to properly place switches, and see that the way was clear for the train; that the conductor was stationed as a look-out at the end of the train in the direction in which it was moving; that the engineer and fireman were in their places; that the bell was rung during the whole time; that the collision was caused not by its fault, but the fault of the plaintiff; that the empty cars on the private side-track had been placed by the engine of the Western and Atlantic Railroad, so as just to clear the track on which defendant's train was moving, there being a post to indicate where the cars should be placed, but instead of allowing them to remain where placed, the plaintiff or the person in his employment moved them, and they rolled down

towards the other track, and were rolling at the time of the collision; and that they had not quite got on the other track, but were so near it that the corners of the cars of each train nearest each other struck.

The defendant's yardmaster and switchman swore that they saw these cars or one of them rolling. The engineer, conductor and fireman each swore to proper observance of their duties. The yardmaster and switchman and the Western & Atlantic yardmaster swore that the plaintiff had been warned about the danger of moving the cars about which he was at work towards this switch or clear-post, on the day of the injury; and that numerous trains, among them this of defendant, had passed along the track at various times during the same day without trouble. By the switchman, the defendant showed that he (the switchman) had gone up the track between Thurmond and Foundry streets just before the collision, in order to see that the way was clear; that everything was right; that he went back towards his train, which had about reached Thurmond street, and was about stepping on it when the collision occurred; and that that was the time when he saw the car or cars on the side-track rolling. The defendant further showed that the grade from Foundry to Thurmond street and out towards the Chattahoochee river was a down-grade, and it required but slight force to cause cars to roll down it, and to acquire considerable speed up it the train must have been in motion for some time; that trains frequently stalled coming up from Thurmond to Foundry street, particularly in the winter time (and this collision occurred in winter), so that it was necessary in starting from the yard to move steadily and regularly, and to check and keep checking the train would cause it to slip back. The yardmaster of the Western & Atlantic Railroad swore that the cars on the side-track were properly put there, so as to clear the post, by the engine on his railroad.

The jury found for the plaintiff $1,400. The defendant moved for a new trial on the following grounds:

(1)–(2) Because the verdict was contrary to law and evidence.

(3) Because the court erred in this: After charging section 708 of the code to the jury, he charged: "This section, as you must have observed, does not require a railroad company to stop its trains when they reach a crossing. All it does require is, that when the train reaches a post mentioned in the section, the engineer shall check its speed and keep checking its speed, so that it may be under control and stop in time in case any person or thing should be on the crossing."—In this case, the injury did not happen at a crossing; there were three crossings within a distance of less than four hundred yards; the train started less than four hundred yards from the place of the injury; it was a heavy train and up-grade; and it was impossible to check and keep checking and allow it to move. The error is in giving this charge in this kind of a case, without qualification. That section did not apply to the facts of this case.

The motion was overruled, and the defendant excepted.

Hopkins & Glenn, for plaintiff in error.

Gartrell & Ladson and Bigby & Dorsey, contra.

Blandford, Justice.

We have carefully considered this case, and are satisfied, from the facts as disclosed by the record, that this accident resulted solely from the negligence of the defendant in error, the plaintiff in the court below. He was charged with the duty of unloading certain cars on a side-track belonging to a gas company. He was warned, twelve or fifteen minutes before the accident occurred, that he must not move these cars, for if he did there would be danger of somebody getting hurt; and yet, disregarding this warning and disregarding his duty, which was to keep the cars in the position in which he found them, he ap-

plied his crow-bar to this train of cars on the side-track and set them in motion, and they moved down the side-track, past the danger post and to the other track, upon which was the train of the Georgia Pacific Railway Company, and in consequence of this the collision occurred.

The allegations of negligence on the part of the railway company are, that it was running its train at too great a rate of speed, and that the bell of the locomotive was not rung. The evidence shows satisfactorily, I think, that the train was not going at more than about four miles an hour; but whatever may have been the speed, and whether the bell was rung or not, this accident did not occur by reason of the speed, or by reason of the fact that the bell was not rung, but it occurred by reason of the fact that the defendant in error, the plaintiff below, set these cars on the side-track in motion; and he is himself chargeable with all the damages that resulted therefrom.

The train of the Georgia Pacific Railway Company was where it had a right to be; it had a right to run upon the track upon which it was running, and at the speed at which it was running, at the time this accident occurred. If it had run at a much higher rate of speed, the accident would not have occurred, because it would have passed the switch before the cars on the side-track could have rolled down to the point of collision. A lower rate of speed would have caused a greater accident, because the cars on the side-track would have had an opportunity to roll down farther upon the other track, great injury would have ensued and many lives might have been lost. And if this be true, to hold that the plaintiff should recover would be to sanction, we think, a great outrage; it would be to sanction his own gross carelessness and negligence.

The code declares that where one causes the injury himself, he cannot recover. If he could have avoided the accident, it was his duty to do so; where he caused it, clearly there was no case of contributory negligence, and no case of any kind. We do not see in this record any

negligence on the part of the railway company, or its
servants or agents. It was performing a lawful business,
running its cars over a track over which it had a right to
run,— a track belonging to the Western and Atlantic
Railroad Company, but over which this company had per-
mission to run its trains; it was performing its business
carefully, so far as we can discern from the record; and
we do not think the plaintiff in the court below ought to
have recovered anything in this case. We think, therefore,
that the court below erred in not granting a new trial;
and the judgment is reversed.