DILLINGHAM v. MORAN et al.

(Circuit Court of Appeals, Fifth Circuit. June 23, 1897.)

No. 556.

RECEIVERS—COMPENSATION—OBJECTIONS TO REPORT.

Where an order of court is made that a railroad receiver shall be paid a monthly salary for his services until he shall be discharged, and he continues to act as receiver, making quarterly reports showing the payment to himself of such compensation each month, and such reports are confirmed without objection, and no steps are taken by those interested to have him

discharged, objections afterwards filed to his reports and compensation, on the ground that he ought to have been discharged years before, should be overruled, and the compensation allowed as long as he continues to act.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

George Clark and D. C. Bollinger, for appellant.
L. W. Campbell, for appellees.

Before PARDEE, Circuit Judge, and NEWMAN, District Judge.

NEWMAN, District Judge.    Charles Dillingham was the receiver of the Texas Central Railway under order of the United States circuit court for the Northern district of Texas at Waco.    He was appointed such receiver on the 4th day of April, 1885.    On December 4, 1886, the court directed that the receiver, Charles Dillingham, be placed on the pay roll of the receivers (there was a joint receiver) at $150 per month as an allowance upon his compensation as receiver in the cause, which allowance was to date from the possession of the receivers, and to continue while Mr. Dillingham gave his personal attention to the business of the company, until the further order of the court.    On the 22d day of April, 1891, the railway property was sold.    This sale did not embrace certain property which was not part of the railway proper, the parts not sold consisting of five lots, lands, notes, etc.    At the time of the sale of the railway property, under a compromise arrangement, the receiver Dillingham was paid $20,000.    On August 28, 1891, at the close of the decree in confirming the sale, this occurs:

"That nothing in this decree contained is intended to affect, or shall be construed as affecting, the status of any pending or undetermined litigation in which said receivers appear as parties.    Such litigation shall continue to determination in the name of said receivers, with the right reserved to said purchasers, should they be so advised, to appear and join in any such litigation; and nothing in this decree contained is intended to affect, or shall be construed as affecting, the receivership of any of the property of the defendant railway company other than the property so transferred to said purchasers, possession of which said property other than that so transferred is retained for further administration, subject to the orders of this court."

At the conclusion of a petition for a modification of the decree of confirmation, this appears:

"It is further ordered, adjudged, and decreed that nothing contained in this decree is intended to affect, or shall be construed as affecting, the receivership of any of the property of the defendant railway company other than the property so transferred to said purchasers; possession of which said property, other than that so transferred, is retained for further administration, subject to the orders of this court, in like manner as if this decree had never been entered or rendered."

Dillingham continued to act as receiver up to April, 1895, apparently, from the record, attending to such matters as were necessary to be disposed of in winding up the affairs of the receivership; and continued to draw and to pay himself the $150 per month until April, 1895.    After the railway was sold, Receiver Dillingham filed regular quarterly accounts for each quarter, ending, respectively, on the 1st days of April, July, October, and January, for the years

1891, 1892, and 1893, and no objection or exception was made to the same, and the special master, John G. Winter, reported favorably upon the same, and they were confirmed. In March, 1894, the receiver filed with Special Master Winter accounts for the quarter ending September, 1893, and after notice by the special master to counsel interested in the matter a hearing was had upon these accounts. Counsel for the Texas Central Railway Company and for the purchasing trustees objected to the payment by Dillingham to himself of $150 per month for the months of April and May, 1893. In disposing of these objections the special master found that Dillingham had, since the sale of the railway property, continued to give, and was still giving, his personal attention to the management of the property in his custody, being all of the property of the defendant corporation not embraced in the sale of 1891. He also found that Dillingham had reported the $150 per month in his accounts regularly since the order made in 1886; that these accounts had been regularly passed upon by the master, after due notice to counsel; and that there had been no objection by any one at interest until the objection then being heard. He found that the parties to the litigation had taken no steps to close the receivership, and had refrained from so doing pending the adjustment of the claims of the Trust Company and the Morgan Company to the property remaining in the hands of the receiver, and that they had, without objection, on full notice, acquiesced in the payment of the salary to Dillingham. He also found that Mr. McHarg, one of the purchasing trustees, had written a letter in March, 1894, to Receiver Dillingham, in which he had recognized the fact that the receiver was under pay until discharged. The special master also found that the objections to the allowance of this amount to Receiver Dillingham were not well taken, and that the receiver was entitled to be compensated for his services, and the responsibilities incident to his position as a bonded officer of the court, and he therefore allowed the items objected to, to wit, two items of $150 each, paid to Receiver Dillingham as salary for the months of April and May, 1893. He also found that the parties at interest, the Morgan Company, the Trust Company, and the Texas Central Railway Company, had made no objection to the compensation of Receiver Dillingham, although duly advised thereof. The special master further found that the receiver was entitled to receive this compensation until the courts shall revoke the order allowing the same. Similar objections were made to the allowance of the special master to Receiver Dillingham of his salary for the months of May, July, August, September, October, and November, 1893. These objections were also overruled by the special master, stating in his report that as to these months he referred to the facts stated in his former report. The reports of the receiver, which embrace this same allowance to himself, were subsequently approved without objection up to April 1, 1894. The accounts from April, 1894, to April 1, 1895, it appears, were being heard by the special master on April 8, 1895, when an order was passed referring the same to Abner S. Lathrop as special master. The exceptions thus referred, together with an amendment, subsequently filed, at-

tacked the right of Receiver Dillingham to receive the $150 per month after the sale of the railway property in 1891; and also charged that, as he was vice president of a bank in which the funds he controlled as receiver were deposited, and that $1,000 per annum had been paid him, as pretended compensation as vice president of the bank, when, in fact, the payment of said $1,000 per annum was a mere pretense, and was made by the bank, and received by Dillingham as interest upon the fund deposited by him, as receiver, in the bank. Special Master Lathrop filed his report on September 26, 1896, in which he found that Receiver Dillingham should be allowed a compensation of $150 per month from the time of the sale of the railroad up until April, 1893, for the reason that no objections were filed to his accounts which embraced the allowance of this item to himself up to that time, and under the rules of court they stood approved; but that from the time that objections were entered, namely, April 1, 1893, down to the last amount allowed him, he found that he was not entitled to the allowance of $150 per month. He found "that the compromise made in September, 1891, allowed C. Dillingham, receiver, $20,000, was intended as revoking the order of December 4, 1886, allowing him $150 per month, and was intended as full compensation for the services up to the time the receivership terminated." He found, therefore, that the amount paid to the receiver from September, 1891, to April, 1893, had more than compensated the receiver for any labor he had performed from September, 1891, to the time of his report, and he therefore recommended that the exceptions to said receiver's report, wherein he had retained $150 per month from April, 1893, up to April 8, 1895, be sustained, and that the said Dillingham be ordered to pay into the repository of the court the amount so received as follows: For 1893, nine months, $1,350; for 1894, twelve months, $1,800; for 1895, three months, $450,—making in all $3,600. He found that the charge made against Dillingham, as to his receiving the $1,000 per year from the bank as interest, was not sustained by the proof, and said: "I consider that the testimony clearly exonerates him from acting in any way in an improper manner with the funds in his hands belonging to said railway company, or that he has, either directly or indirectly, benefited by the same. I would therefore recommend that the exceptions to his manner of using said funds be overruled." This report was subsequently approved by the court, to which action of the court approving the same exceptions were duly reserved, and the question presented here for determination is the correctness of the action of the special master and of the court in requiring Receiver Dillingham to repay the $3,600 received by him after April, 1893.

The case, as shown by the foregoing statement, presents somewhat remarkable facts. In the first place, those who are most interested in the matter of the receiver's compensation appear to have made no objection at all to his receiving the $150 per month at any time. And, next, conceding the purchasing committee to have been interested in this question of compensation, they stood by for years, and allowed the receiver Dillingham to pay himself this amount,

simply objecting during the last two years, and having their objections overruled, without any further action. No effort seems to have been made to have the receiver discharged; no motion appears to have been made to have the court reduce the amount of his compensation; the orders fixing his compensation originally were allowed to stand; the orders passed at the time of the sale of the road and the confirmation of the sale directing the continuance of the receivership stood unchanged; and yet, after the receiver had proceeded until 1895, with all the responsibilities, obligations, and duties of the receivership upon him, and after he had retained, under the still existing order of the court, the amount allowed him by that order, a motion is made to require him to refund the money, and to pay it into the registry of the court, accompanied with damaging, but wholly groundless, charges affecting his honor and honesty. Why the receiver should have been permitted to go on and receive this $1,800 per annum without any movement on the part of those interested to change the existing status, is difficult to understand, except upon the theory that his services were valuable and necessary. When the purchasing committee excepted to the master's report, and their exceptions were overruled, they seem to have acquiesced all along, until suddenly, in 1895, this proceeding was instituted. The payment of the $20,000 as a compromise for the receiver's services was proved to have been based on the understanding that the receivership was then to be wound up and the receivership discharged, and did not in any way, so far as we can see, affect the order of the court making the monthly allowances to Dillingham; and, if it could have been so construed, why was it not brought to the attention of the court at the time, certainly at the end of the first quarter after the sale, when the receiver's accounts were filed? It was well known, or should have been well known, that he was receiving this compensation. His accounts were on file in the clerk's office, showing that fact. The finding of the special master is that up to April, 1893, the compensation should be allowed, because the accounts having been filed, and there being no objection, they stood presumably approved by the court under the rule. If the approval of the court is presumed up to April, 1893, why is it not equally true that the approval of the court is presumed to the receiver's continued receipt of this amount? If the compensation was to run at all after the sale of the railroad and the payment of the $20,000, there was no reason for stopping it in April, 1893. If it continued rightfully, it continued by virtue of the original order allowing it in 1886, and it continued until the receiver was discharged; and so, instead of the approval of the court operating to justify the allowance up to April, 1893, and no longer, its effect would be to approve the allowance under the original order so long as Dillingham continued to act as receiver. It is difficult to determine from the record exactly what services beyond perfecting land sales and preserving the fund the receiver rendered after the sale of the railway, but it is certainly true that, if the purchasing committee, or any one interested, had moved in the matter before the court, the monthly compensation Dillingham was receiving, if too large, would have

been reduced to the proper amount, or he would have been discharged, and some other arrangement made for winding up the outstanding business. Nothing of this sort was done, however, and he was allowed to go on as receiver, with all the responsibilities attached to that position and to the business in hand, and, if entitled to compensation at all after the sale of the railway, we see no reason why he is not entitled to it up to 1895. We are of the opinion that the report of the special master, and the decree of the court below confirming the same were erroneous. The decree of the circuit court is reversed, and the cause is remanded, with directions to overrule and discharge the motions attacking the receiver's accounts.