## DILLINGHAM v. MORAN et al.

(Circuit Court of Appeals, Fifth Circuit. May 1, 1900.)

### No. 556.

1. RECEIVERS—COMPENSATION—OBJECTIONS TO REPORTS.

An order of court was made, that a railroad receiver should be paid a monthly salary as long as he continued to act, or until the further order of the court. On the sale of the railroad a sum was allowed the receiver, and accepted, in full compensation for his services to that time; but certain other property of the defendant was expressly retained for further administration by the court, and remained in charge of the receiver, who continued to act, making quarterly reports showing the payment to himself of such monthly compensation. The most of such reports were approved by the master without objection. As to one or more, objections were filed, which were heard by the master and overruled; and his reports filed in court were allowed to stand confirmed, under the equity rules, for lack of exception thereto. *Held*, that parties interested, who had taken no steps for the removal of the receiver, or to bring the matter in any, manner to the attention of the court, could not thereafter attack the compensation retained by him in accordance with the order under which he was acting.

2. APPEAL—REVIEW—FINDINGS OF MASTER.

The findings of a special master, approved or adopted by the court, are subject to review on appeal, where they embody only conclusions of law or deductions from undisputed facts.

Appeal from the Circuit Court of the United States for the Northern District of Texas.

Geo. Clark and D. C. Bolinger, for appellant.

L. W. Campbell, for appellees.

Before SHELBY, Circuit Judge, and NEWMAN and MAXEY, District Judges.

NEWMAN, District Judge. This case was before this court at a former term, and a decision rendered reversing the decree of the circuit court (26 C. C. A. 596, 81 Fed. 759); and this decision was subsequently by the supreme court reversed because of the disqualification of Circuit Judge Pardee, who had been a member of the court render-

ing the decision here (174 U. S. 153, 19 Sup. Ct. 620, 43 L. Ed. 930). The facts in the case are fully stated in the former opinion by this court, and also, to some extent, in the decision of the supreme court; and a repetition of them here is unnecessary, except in so far as is necessary to state the views now entertained.

By the original order allowing Dillingham $150 a month, it was to continue while he gave his personal attention to the business of the company, or until the further order of the court. After the railroad was sold he accepted $20,000 as full compensation for his services as receiver. After this amount was paid to him, which was in September, 1891, he continued to act as receiver for the purpose of holding and managing certain property not covered by the trust deed under which the railroad was sold, and which did not pass by the sale. In the original decree of confirmation, dated August 28, 1891, it was provided that:

"Nothing contained in this decree is intended to affect, or shall be construed as affecting, the receivership of any of the property of the defendant railway company, other than the property so transferred to said purchasers, possession of which said property other than that so transferred is retained for further administration subject to the order of this court."

In an order correcting the decree of confirmation, November 4, 1891, there was the same provision, and similar language was used. Dillingham continued to act as receiver after this, and to pay himself $150 per month. His accounts which showed this payment to himself were filed quarterly with John G. Winter, the special master in the cause, for examination, apparently by order of the court. No exception whatever was made to this allowance by Dillingham to himself until May, 1894. The objection then made was to the accounts for April and May, 1893; and the objection was heard, apparently, when the accounts for July, August, and September were under examination. It appears from a subsequent report that in the same connection the special master also heard objections to the accounts for July, August, and September, 1893. The exceptions made to Dillingham's receiving this $150 a month were by the purchasing trustees of the railroad, the appellees here. The special master, as appears by his report of June 24, 1894, overruled these objections, and subsequently, on June 30, 1894, overruled the objections to the allowance for October and November, 1893, also. The objections went in effect, however, to the correctness generally of this charge of Dillingham after the sale of the railroad. The accounts for some of the subsequent months were approved by Special Master Winter, as appears from his report of November 17, 1894, and apparently without objection; none being referred to, although notice was given to counsel. Exactly what the truth is about the filing of these reports in the office of the clerk of the circuit court it is somewhat difficult to ascertain from the record. The vouchers alone show entry of filing in the clerk's office. The reports themselves bear much earlier dates.

The statement by this court in its former opinion in this case that if the approval of the court is presumed up to April, 1893, its approval should also be presumed as to the subsequent months, is fully justified, if we are controlled by the dates of the reports of the special master,

certainly up to the report of the master of November 17, 1894. If the dates of filing the accounts in the clerk's office, and not the date of the reports, is considered, probably this presumption would not be justified. As to the charge of the receiver after April 1, 1893, objections had been filed, and the same had been overruled after hearing counsel for the objectors. Whether the general practice in this district was to furnish counsel with a draft of the report, the record does not advise us. It does appear from the record, however, to have been done in connection with the compensations fixed in this case in 1891 by Special Master Winter. If the reports of the special master are to be considered as of the dates they bear, they certainly stood approved, under equity rule 83, as they bear date more than 30 days before any exceptions were filed in court, except as to the last 6 months, now in question. There can be no question that the charge from April 1 to June 30, 1893 ($450 of the amount which Dillingham was directed to refund), stands approved by the court, by virtue of the equity rule; for the report of these items was filed, in any view of it, July 30, 1894, —several months before the exceptions were filed in court. Even if the views of Special Master Lathrop on this part of the case are correct, there should be a reversal as to this $450. There would seem to be even stronger ground for sustaining the report of the special master where counsel had notice, and appeared and objected to a matter in question, and an adverse report was subsequently filed, than in a case where the report was filed without appearance or without objection. But we are satisfied that the circuit court erred in approving the report of Special Master Lathrop, directing Dillingham to refund this $150 a month, and that the error went to the whole amount to which the order applied. Dillingham was to receive this $150 a month, as stated, until the further order of the court. He paid it to himself from September, 1891, to May, 1894, without objection. His quarterly accounts filed with the special master showed all along this payment to himself. While objections were made in 1894, these objections were not sustained, and yet the matter was in no way brought to the attention of the court until April, 1895. In March, 1894, McHarg, one of the purchasing trustees, in a letter to Dillingham, recognized the fact that he was on the pay roll of the company. Dillingham had the duties and the responsibilities of the receivership on him during all the period for which he charged, and that by an express and unrescinded order of the court.

It is said that the report of Special Master Lathrop, as approved by the circuit court, should not be interfered with, because of the rule that the report of a master on questions of fact will not be interfered with unless it is manifestly erroneous. This is the rule, undoubtedly, where a master in chancery makes a finding on conflicting evidence, but we do not see any conflicting evidence in this case. There are conflicting views of the meaning of conceded facts, and there are conflicting views of the law as applicable to particular circumstances and to particular orders of the court. The views of Special Master Lathrop as to the meaning of Judge Pardee's original order making Dillingham an allowance of $150 a month, and as to the effect on that

'order of the payment made to Dillingham of $20,000 at the time the railroad was sold, are not findings on conflicting facts, but on conceded 'facts. There may be some matters as to which the witnesses in the case are not in entire accord, but, substantially, we think the case turns on the construction of the orders of the court, and of the effect of admitted facts. The many authorities cited by counsel for the appellees are not questioned, but we think the rule applicable here is more clearly stated in McConomy v. Reed, 152 Pa. St. 42, 25 Atl. 176, 'as follows:

"It may be stated as a general principle that where the evidence is conflicting, and the credibility of witnesses is involved, a master's finding upon a question of fact is entitled to the same consideration as the verdict of a jury, and will not be set aside unless it is clearly and palpably against the weight of the testimony. If, however, his finding is a deduction from undisputed facts or from uncontradicted and credible evidence, the controlling reason for the application of this principle is not present, because in such case he has no greater facilities for reaching a correct conclusion than the court has in passing upon the exceptions to his report."

This rule is cited and approved in Beach, Mod. Eq. Prac. § 711.

It is entirely evident that the re-reference of Dillingham's accounts to Special Master Lathrop, after the same had been considered and while some of them were being considered by Special Master Winter, was caused mainly by the charge made in the exceptions to the special master's report as to Dillingham's improper use of funds in his hands. It can hardly be supposed that the reports of a special master, who had continued in the service of the court for years, and satisfactorily so, should be referred to another special master without strong reasons therefor. This is found in the charge against Dillingham made in the exceptions of April 8, 1895, to some of Special Master Winter's reports, and upon which the re-reference was ordered. These exceptions made a charge against Dillingham of gross abuse of his trust, and, as to this charge, Special Master Lathrop says that it was not sustained by the proof, and that the testimony clearly exonerated him. We are satisfied that the decree of the court below, directing Dillingham to repay this money, was erroneous. It is therefore ordered that the decree be reversed, and the cause be remanded, with directions to overrule and discharge the motions attacking the receiver's account.