McMILLAN v. GRAND TRUNK RY. CO. OF CANADA.

(Circuit Court of Appeals, First Circuit.   July 6, 1904.)

No. 511.

1. MASTER AND SERVANT—DEATH OF SERVANT—RAILROADS—INEXPERIENCED SERVANT—FAILURE TO INSTRUCT—EVIDENCE.

Where plaintiff's intestate, a boy 17 years of age, who had gone into defendant's railroad yard with an experienced servant for the purpose of receiving instructions as to the manner of coupling cars, was killed between two cars, proof that the servant who was with deceased was himself young, coupled with the mere fact that deceased was injured, without evidence as to how the injury occurred, or that there was in fact a failure to instruct, was insufficient to establish defendant's negligence.

2. SAME—VIOLATION OF ORDERS.

Where deceased was ordered to accompany an experienced servant into a railroad yard, to receive instructions as to coupling cars, by defendant's superintendent, and who yet did not comply with the instructions of the engineer with whom he was working, that he should not go between the cars, but that he should watch his instructor in the work, and who received the injuries from which he died while between two cars which were being coupled—the engineer being without knowledge of his position at the time —defendant was not liable for his death.

Aldrich, J., dissenting.

In Error to the Circuit Court of the United States for the District of Maine.

Benjamin Thompson, for plaintiff in error.

Clarence A. Hight (Leroy L. Hight, on the brief), for defendant in error.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge.   This writ of error involves a claim for damages arising out of the death of a boy employed by the defendant corporation, who, as the plaintiff alleges, was set to work coupling freight cars, and was fatally injured while coupling them.   The learned judge in the Circuit Court directed a verdict for the defendant,   to which the plaintiff below, now the plaintiff in error, excepted, and thereupon brought her case to us.   In addition to the other issues

which we will state, the plaintiff alleged in the Circuit Court that the defendant, and the cars in use at the time the injury occurred, were each engaged in interstate commerce, and that the cars were not provided with automatic couplings as required by the statutes of the United States. This, however, has disappeared from the case as presented to us.

The plaintiff's case was perhaps deficient in some respects other than in those which we will particularly consider. With reference thereto, however, we are not to be understood as expressing any opinion. The intestate was John McMillan, aged 17 years. He was to relieve temporarily another boy, John Parker, who was about to take a vacation, and Parker had been directed to instruct McMillan in reference to his expected duties. The plaintiff's evidence describes the automatic couplers and their operation, although not very clearly—probably in consequence of the fact that, as the record shows, a coupler was produced in court, and its operation exhibited. However, we are bound to assume, as claimed by the plaintiff, that, under the circumstances involved in the issue before us, it was necessary or desirable that whoever was attending the coupling should sometimes go between the cars for opening up what is known as the "knuckle." It must also be assumed that coupling any cars which are being switched is of such a character that a boy of tender age should be instructed or cautioned in reference to it before being permitted to undertake it. It is not questioned that the deceased stood as a servant. Huntzicker v. Illinois Cent. R. Co. (C. C. A.) 129 Fed. 548.

It is claimed by the plaintiff that there was sufficient to justify the jury in finding that the method in which the injury occurred was as follows: The track on which the cars were being switched was inclined to such an extent that they would sometimes start unless the brakes were set. At the time the locomotive was pushing two cars, and endeavoring to couple on a third, the locomotive being headed towards the cars. The third car did not couple, but, instead, was pushed up the track a short distance. The car which had not been coupled came back on the track, and either struck the second car ahead of the locomotive, or came within a few inches of it; and in consequence thereof the plaintiff's intestate, who was between the cars with Parker, helping to open up the coupling, was caught and injured. The particular fact to which we call attention in this statement is that McMillan was between the cars, helping Parker, when he was injured.

The pleadings are of a confused character. It is difficult to ascertain precisely on what points they rest. However, as the case is presented to us, everything sifts out, except the proposition that the defendant was in fault for not causing McMillan to be properly instructed before he went between the cars, as claimed by the plaintiff, for the purpose for which he is said to have gone there. The declaration should have been properly purged on demurrer, but, not having been, and there being in the record no ruling or opinion of the learned judge who presided in the Circuit Court showing on what grounds the case proceeded, we are compelled to resort to the propositions made by the plaintiff at bar in order to ascertain wherein the defendant is claimed to have been chargeable.

Each count alleges that the plaintiff's intestate was caught between two cars, which we have already said the plaintiff makes an emphatic element of her case, as stated to us on this appeal. Passing by the plaintiff's propositions which it is not necessary to contravene—first, that we should not give particular weight to the peremptory ruling of the court below; second, that Vliet, the superior representative of the defendant with reference to the work to be done, knew that the plaintiff's intestate was to assist in shifting during Parker's absence, and was to be taken out into the yard by Parker for instruction, and that he was out there for that purpose; third, that, if the defendant makes any claim of contributory negligence on the part of McMillan, the burden is on it with reference thereto; and, fourth, that the case presents some questions peculiarly within the province of the jury—we are left only three questions. One seems to be based on the sweeping assertion that, in any event, Vliet was guilty of negligence in employing Mc-Millan as a substitute for Parker. One count does apparently contain an allegation that the plaintiff's intestate was "carelessly, negligently, and improperly ordered and directed to go out into the yards and assist in the shackling"; but it fails to state wherein the negligence consisted, as does also the like proposition made at bar by the plaintiff. However, the evidence fails to show that McMillan was sent out into the yard to "assist" in shackling. On the other hand, it shows that, if he was sent out at all, it was for instruction. The exact expression was, "Break him in."

In this connection the plaintiff relies on Railroad Company v. Fort, 17 Wall. 553, 21 L. Ed. 739. There the boy who was injured, and who had been put to work by his father, was employed in what was not dangerous, and was suddenly ordered to engage at once in work among rapidly revolving machinery. It was held, at page 558, 17 Wall., 21 L. Ed. 739, that this was not what his father engaged he should do, and that one of his age could not be understood to know the peril thereof. The case is essentially unlike that at bar, in the fact that the injured boy was not sent out for instruction, but to do immediately a piece of work of a dangerous character. There is nothing in the record, or in facts of common knowledge, which would justify a jury in finding that a boy of McMillan's age might not properly be instructed so as to do with safety this switching, which was of a purely incidental character. On the whole, this does not represent any true issue in the case.

The remaining propositions are essentially alike: First, that the duty of instructing a green and inexperienced servant was a personal obligation on the part of the defendant, and that, if Parker was delegated to perform that duty, and failed to instruct, or was incompetent to do so, his negligence or incompetence was the defendant's negligence, which we do not question; and, further, that the plaintiff's intestate was in fact set to work without instruction, and that Parker was incompetent to instruct, and did not, in fact, instruct. The case refers to the fact that the track where the switching was being done was not wholly at grade, but in this there was nothing unusual. Neither is it made the basis of a substantial claim. It, of course, increased the necessity of instructing or cautioning McMillan, and nothing more.

Before proceeding further, we desire to make some observations with reference to a conversation which occurred immediately after the accident, put into the case by the plaintiff, apparently under objections by the defendant. This conversation was participated in by all who were present at the time of the injury, including the engineer, Sloane, to whom we will refer again, and Parker, who was the only one who really knew how it occurred. Parker deceased without his evidence being taken. On what ground and for what purpose the plaintiff was allowed to put in this conversation is not disclosed. It was first objected to without any ground of objection being stated, which, of course, was insufficient. After some conversation between the court and counsel, both retired to chambers, and, after consultation there, the evidence was admitted. The record contains no statement on the part of the plaintiff why he claimed to introduce the evidence, except, in a general way, that it was a part of the res gestæ, or why the defendant objected thereto, and no ruling by the court which enables us to comprehend its position. We are not certain, therefore, whether we would be able to regard this conversation if it became essential. In our view of the case, however, it did not, because all it covered was two facts—a statement by Parker that McMillan was in the yard with him while he was switching, and that Vliet was told that McMillan had been taken out into the yard, and Vliet did not remonstrate. In our view of the case, the first fact, as claimed by the plaintiff, is immaterial, and the second is both immaterial and inconsequential, for the following reason: The question put to Vliet by the plaintiff was in the following form: "Did you make any objection at that time to Mr. Sloane for taking him out?" This was admitted under a general objection taken by the defendant, and an exception allowed. The record, however, shows that Sloane had no connection with taking the McMillan boy into the yard, and did not even know that he was there.

In order to understand the bearing of the plaintiff's propositions which we have referred to, we must develop her statement of the case further. The day before the accident, the boy Parker asked Vliet for leave to go on a vacation, and finally suggested McMillan to fill his place in his absence. Vliet consented, but told Parker to take him out the next morning, which was Saturday, and "break him in." Parker's vacation did not commence until the following Tuesday or Wednesday, so that there were three or four days for instructing McMillan. The work of switching and shifting was on a siding connected with the roundhouse, and related mainly to cars of merchandise and coal for use therein, cars loaded or to be loaded with cinders, and all sent in from the main track. About 7 o'clock on Saturday morning there was occasion to shift out a car of oil and an empty box car, and Parker had McMillan with him. After this work was finished, which took from 35 to 40 minutes, McMillan went back to his work in the roundhouse, where he had been employed for a few weeks as a cleaner of locomotives. About half an hour later, Parker told Sloane, the engineer, that a cinder car needed to be shifted, and about five minutes afterwards Sloane took his engine out for that purpose. In making this second shift, he never saw McMillan until after the injury. He, however, communicated with Parker while shifting. He had coupled to two

cars, toward which his locomotive headed. The purpose was to couple the cinder car at the tail of the other cars. He called out to Parker: "Frank, how are you fixed?" Parker replied: "All right, Jim; come ahead!" Sloane came ahead, and, when the second and third cars came together, they did not couple. The third car went up the track a short distance, and then Parker disappeared between the cars which failed to couple, and Sloane lost sight of him. Parker came out from between the cars, and afterwards again disappeared from Sloane's view; and at that time the third car, which had failed to couple, came back, and either struck the second car, or came within a few inches of it. At this time the engineer saw an ash-pit man named Johnson give a signal. He immediately stopped his engine, stepped to the fireman's side of the locomotive, and saw Parker on the left-hand side of the track, between the cars that failed to couple, leaning over McMillan. This was the first that Sloane knew that McMillan was there, and is all the evidence which the case discloses with reference to the manner in which McMillan came there, except so far as the conversation with Vliet, already referred to, stated that he went out with Parker; and this, moreover, is all the evidence as to the way in which the injury happened.

These statements are drawn almost entirely from the plaintiff's proofs, and all of them are in harmony with the position which the plaintiff takes. She calls our attention to no facts tending to support any essential allegations beyond those which we have related. Of course, the plaintiff's propositions involve the necessity of proving that McMillan, the plaintiff's intestate, was injured in consequence of a failure to properly instruct him. The mere fact that Parker was himself young, coupled with the other mere fact that McMillan was injured, leaves a gap which the plaintiff has utterly failed to fill, because, notwithstanding all that, she must show that there was in fact this failure to instruct. The plaintiff does not prove incompetence on the part of Parker to instruct, nor inexperience. On the other hand, the record shows beyond dispute that Parker was experienced, and that he was trusted by his employers in and about this work. Indeed, the only evidence with reference to Parker's qualifications is that he was apt. The record fails to show any inexperience or lack of competence to instruct on the part of Parker, or any other fact to justify the jury in undertaking to assume a failure on his part to instruct. Therefore the verdict for the defendant might be sustained because this gap was not supplied, if for no other reason.

However, we can put the case on a proposition which perhaps will appear more just, because it leaves nothing to mere presumption one way or the other, but is direct and conclusive to the point that McMillan was instructed, whatever Parker did or failed to do. Sloane, the engineer, was called by the plaintiff, and no effort was made to impeach his character or his testimony, and there is no suggestion that this could have been done. He testified with reference to the first switching in the early morning of Saturday:

"Q. When you went out on the 14th of June, 1902, who went with you? A. Frank Parker.

"Q. Anybody else? A. This boy, McMillan.

"Q. Did they both get into the cab with you? A. No, sir.

"Q. How? A. Parker jumped on the front of the engine, and I stopped. The first thing I said, I says, 'Parker, where is that boy going to?' His place was in the shop, and I knew that. He says, 'He is going to take my place.' I says, 'Where you going?' He says, 'Going to Boston.' I says, 'When?' He says, 'Tuesday or Wednesday of next week.' I says, 'Young man, come here.'

"Q. Now, before you go on, is that all the conversation you had? A. Up to that time. I says, 'Don't you attempt to make a coupling.' I says, 'You come on the yard and watch Parker, how the work is done.'

"Q. At that time, did you have any talk with him, as to whose orders he came out there on? A. I says to Parker—when I says, 'Whose orders?' he says, 'The boss's.'

"Q. What did you do then? A. I jumped on my engine, and went out to the side track and coupled on a car of kerosene oil and an empty box car; and before I started to move I told this boy the second time, I says: 'Don't you attempt to go in between those cars at all. You see Parker do the work for three or four days.' I left then, those two cars—placed one on one track, and one on the other, to transfer nine barrels of kerosene oil to be shipped away. I told the boy to go back in the shop after he was done, probably for an hour or two."

Therefore, whatever McMillan received or failed to receive from Parker, he had these positive instructions from the engineer, who was the superior on the ground. These, if obeyed, would have prevented the accident, which, in accordance with the statement made by the plaintiff at bar and in her brief, as well as in her pleadings, to which we have already referred, occurred by his being caught between the two cars. There is no way of meeting this, looking at the well-known authority of such an engineer over those who are working with him, and his well-known right to command them; and there can be no question that McMillan was bound to obey these instructions. These instructions were sufficient as against every danger, including that arising from the grades of the track; and, coming as they did from the representative of the defendant corporation on the ground, they meet and avoid every suggestion of negligence.

It may be thought that McMillan might assume that Vliet was the superior over all, and therefore might regard his instructions to Parker to "break him in" as superior to the order given him by Sloane, but it is to be remembered that the record nowhere shows that McMillan knew what Vliet's orders were. They were communicated to Parker, and not to him. However, the reasonable view of any suggestion of that character would be that, whatever orders Vliet might have given were necessarily and clearly of a general character, subject to be supplemented or modified by the person in charge on the ground where the work was being done, as there was occasion therefor. The plaintiff herself makes no suggestion of the kind we have last referred to; nor does she make any suggestion with reference to the orders which Sloane gave McMillan, except a general one that the jury was not bound to accept the testimony of any one witness. She cites some authorities on this latter proposition, none of which would be questioned, and all of which are remote from the case at bar; but she fails to criticise Sloane's testimony in any particular, or point out anything in it which would justify the jury in rejecting it, or would excuse the court from setting aside the verdict if it had done so, or anything whatever, except, as we have said, the citation of some decided cases, without any attempt to show how they apply to the facts before us.

Independently of other propositions, we are clear that the judgment of the Circuit Court should be sustained by reason of those on which we have enlarged.

The judgment of the Circuit Court is affirmed, and the defendant in error recovers its costs of appeal.

ALDRICH, J. (dissenting). I incline to the view that the plaintiff should have been permitted to go to the jury upon the third count of the declaration, which alleges that the track was constructed on such a grade that cars would move by gravitation, unless trigged, the brakes set, or some other provision made to prevent such movement, and that an inexperienced boy, sent to perform work in a dangerous place without suitable instructions as to the manner in which the dangers were to be avoided, was caught between two cars which came together by reason of such faulty construction and grade.

The McMillan boy, who was an inexperienced youth, was sent by a foreman and superintendent into the railroad yard, or a place for hauling, shackling, shunting, and moving cars, to be broken in by a Parker boy, who had had some experience. It is true, the engineer testifies that he told the McMillan boy not to attempt to make a coupling, but to watch Parker and see how the work was done; but, taking the instructions altogether, they were, from the superintendent, that he should go into the yard to be broken in by the Parker boy, and from the engineer, not to attempt to make a coupling, but to watch how the work was done.

Although it is admitted by the defendant's witnesses that the track was so constructed that cars kicked back or knocked ahead would, unless trigged, sometimes return of their own motion, there is no evidence that the deceased boy knew of, or was cautioned against, such danger. It appears from the evidence of Sloane that cars attached to the engine were thrown against a car which did not couple, and which was thrown back a few feet, and, recovering from the force, moved back toward the train of its own motion; and, although the witness says that on its return it did not strike the other car, it did come within three or four inches—sufficiently near to crush the boy and cause the injury complained of. It is quite evident that the McMillan boy was not killed between the cars where the Parker boy was coupling, but between cars that failed to shackle and came back again. This appears from the evidence of Sloane, in his answers to interrogatories 95, 96, and elsewhere.

The oral evidence as to the particular manner in which the injury was sustained is very meager, but there is nothing in the case to show that the boy was killed while disobeying the instructions of the engineer. The injury and the dangerous condition of the tracks being conceded, I think the plaintiff was entitled to go to the jury upon the question whether the injury was caused by a creeping car on an inclined track while the boy was watching how the work was being done. Indeed, I think it highly probable that the boy was crushed by a car which quietly came down the track and caught him unawares while watching the work, the operations, and the movements of the train in

coupling. The whole situation tends to establish that beyond reasona-ble question.

The third count is evidently constructed upon the theory that the boy was caught between two cars which came together by reason of the faulty and inclined condition of the track. It is true, the count in question alleges that the boy was caught while coupling cars; but, I take it, recovery could be had upon a count so constructed if the evidence should disclose that he was injured by the fault of the defendant while not in the act of coupling, but while watching the work which he was learning how to do under instructions to that end.

Contributory negligence being a defense rather than an element of the plaintiff's case, the plaintiff was entitled to go to the jury upon the question whether the injury resulted from the boy's being involved in a faulty and dangerous situation, about which he had not been properly warned.