### SEABOARD AIR LINE RY. v. SHANKLIN.

(Circuit Court of Appeals, Fifth Circuit.   October 16, 1906.)

#### No. 1,478.

1. MASTER AND SERVANT—ACTION FOR DEATH OF EMPLOYÉ—PROOF OF RULES OF EMPLOYER.

It is the duty of a railroad company to establish and enforce definite rules and regulations for the protection of its employés, and of employés to obey such rules, which, when known to them, are as law in the regulation of their conduct; but where oral instructions given as a rule of conduct are relied on in an action for the injury or death of an employé, and have a vital bearing on the rights of the litigants, their existence, meaning and import are matters for proof.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, § 283.]

2. SAME—QUESTIONS FOR JURY—CONTRIBUTORY NEGLIGENCE.

In an action to recover for the death of a section foreman on defendant's railroad, who was killed by a collision between hand cars, on one of which he was riding, seated on a box on the forward end, it was shown that a rule of the company required section foremen to receive instructions from the roadmaster and the latter testified that he instructed all foremen, including the deceased, not to ride in such position. There was testimony tending to show that other foremen had not been so instructed, that it was customary for them to so ride with the roadmaster's knowledge, and that he had himself so ridden. There was also a conflict of testimony as to the comparative safety of such position and others in case of such a collision. *Held*, that the court correctly refused to direct a verdict for defendant on such evidence, and properly submitted the question of contributory negligence to the jury.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 34, Master and Servant, §§ 1089–1132.]

In Error to the Circuit Court of the United States for the Northern District of Georgia.

E. T. Brown and H. N. Randolph, for plaintiff in error.

C. T. Ladson, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MEEK, District Judge.

MEEK, District Judge.   This action was originally brought in the city court of Atlanta, Fulton county, Ga., by Mrs. Ursula E. Shanklin against the Seaboard Air Line Railway to recover damages for the alleged negligent killing of her husband, Calvin A. Shanklin.   Upon

the petition of defendant the case was duly removed to the United States Circuit Court for the Northern District of Georgia, where it was brought to trial and resulted in a verdict and judgment in favor of plaintiff for $5,000. The accident resulting in the death of plaintiff's husband occurred in the state of Florida, and the suit is under the provisions of section 3, c. 4071, of the laws of that state (Rev. St. 1892), which is as follows:

"If any person is injured by a railroad company by the running of locomotives or cars or other machinery of the company, and the damage was caused by the negligence of another employé and without fault or negligence on the part of the person injured, his employment by the company shall be no bar to a recovery. No contract which restricts such liability shall be legal or binding."

Chapter 3439, Laws Fla. 1883, p. 59 (Sections 2342, 2343, Rev. St. 1892), provides for the survival of actions in event injuries result in death, and establishes the right to sue, first, in the surviving widow.

The petition charges that plaintiff's husband, while in the employ of the defendant as section foreman, received injuries resulting in his death because of the careless and negligent operation of two lever or hand cars by the crews thereof, who were also in the employ of the defendant; that the crew of one of these cars carelessly and negligently propelled it so that it ran into and collided with the hand car on which her husband was riding; that because thereof he was thrown therefrom and run over, both by his own and by the colliding car; that the crew of the third of these cars carelessly and negligently propelled it so that it ran into the car, colliding with that on which plaintiff's husband was riding, and that it also ran on and over him; that these things happened without any fault or want of care on his part. The defendant answered, admitting its incorporation and the operation by it of a system of interstate railways, and denying all other allegations material to plaintiff's cause of action.

Calvin A. Shanklin was a section foreman in the employ of the Seaboard Air Line Railway at Hampton, Fla. Between sundown and dark on the 12th day of October, 1903, he was returning northward to Hampton from work on his section. He and his crew were occupying and propelling a lever or hand car. Three other crews, one of these being an extra crew, and the other two bridge gang crews, were in close proximity and also propelling lever or hand cars in the same direction, toward Hampton. Shanklin was on the second car. He sat on a box on the right of the front end of the car. While the four cars were in motion, at speeds estimated variously by different witnesses from 8 to 15 miles an hour, something became wrong with the brake on the front car and its speed was checked. Thereupon its foreman signaled Shanklin to check the speed of his car. Shanklin threw up his hand, and one of his men stepped on the brake and checked its speed. In a few seconds thereafter the third car collided with and jammed into Shanklin's car. There were either two or three distinct impacts between Shanklin's and the third car. One witness testified, in substance, that Shanklin was toppled from his seat and thrown to the ground in front of his car by the first of these; that he lit on his feet between the rails and started forward and to the side to get out of

the way when the second impact occurred; that this gave his car additional momentum, so that it overtook and ran over him. Another witness testified that Shanklin retained his seat through the first impact, that he was thrown from his car by the second, and that he was run over because of the third. There was evidence tending to prove that, upon receiving the signal to slacken the speed of his car, Shanklin by throwing up his hand signaled the third car to check up; that one of the men under him secured a green flag that was on the car and waved the crew of the third and fourth cars to slow up; that, when the collision was imminent, the men on Shanklin's car "whooped and halloed" warnings to the men on the third car; and that, notwithstanding these signals and warnings, they continued to work the levers and propel their car continuously until it collided with and jammed into the car on which Shanklin was riding, and even after the first impact with his car, until there was a second and third impact. Shanklin was run over by his own and by the third and fourth cars, thus receiving the injuries from which he died shortly thereafter. The evidence also tended to prove that at the time of the accident there was sufficient daylight for the crews of the different cars to have easily seen the signals given; that, when Shanklin signaled the crew of the third car to check its speed, there was sufficient distance between the cars for it to have avoided the collision, had the signal been obeyed; that there was a sufficient distance between the third and fourth cars at the time of the collision between the second and third for the fourth car to have been stopped. The defendant introduced in evidence rule No. 64 of its book of rules, as follows: "Section foremen report to and receive instructions from the roadmaster." W. H. Thomas testified that he became roadmaster for the defendant railway south of Jacksonville, in Florida, on the 1st day of August, 1903; that on the 4th day of August he gave Shanklin instructions as to his duties concerning hand cars. On this subject he testified, in part, as follows:

"I can't say whether any of the hands were present or not. They might have been, or might not have been [meaning when he gave instructions to Shanklin]. Well, sir, at that time [August 4, 1903] I made a trip over the road. On the division I noticed a number of section foremen riding on the front of the hand cars on water kegs and boxes, and I instructed all foremen, together with Shanklin, and told every section foreman I came to, that the practice of riding on boxes and water kegs on the front of hand cars must be stopped, as all the injuries that had occurred to them had been caused by that practice."

Much evidence was introduced by both plaintiff and defendant pertaining to the relative safety of different positions on hand cars as places to ride. It was the opinion of some of the witnesses that it was dangerous to ride seated on a box in front, and of others that such position was safest in event of a collision from the rear, as a person would naturally be thrown backward against the levers, and not forward off the car. Alex Colley, a witness called by the defendant, and who was foreman of the extra gang at the time of the accident and still in the employ of the defendant at the time of the trial, testified that he did not remember to have received any instructions from the roadmaster, Thomas, not to ride on the front of his hand car. He also testified that Thomas had ridden on his (Colley's) car in front

and had seen him (Colley) riding in front before Shanklin's death. Upon the close of the testimony in the trial of the case the defendant moved the court for a directed verdict, on the ground that the uncontroverted evidence showed the death of Shanklin was caused by reason of his disobedience of the positive instructions given him by his superior in authority, the roadmaster. The court refused the motion, and submitted the question as to whether or not Shanklin had received such instructions for the determination of the jury. This action of the court is assigned as error, and is relied upon in oral and printed argument as the main ground for asking a reversal.

It was clearly the duty of the court to submit the issues of negligence and contributory negligence arising on the proof for the determination of the jury, unless it became its duty to withdraw the case and charge peremptorily because of the evidence relating to the instructions given Shanklin and his violation of them. It is the duty of a company engaged in a complex business to establish and enforce definite rules and regulations for the protection of its employés. It is the duty of employés to obey such rules. McGhee v. Campbell, 101 Fed. 936, 42 C. C. A. 94. Where such rules are established and promulgated in some reasonable and practical way, and employés have knowledge of them, they are as law in the regulation of their conduct. Carroll v. E. T., V. & G. Ry. Co., 82 Ga. 452, 10 S. E. 163, 6 L. R. A. 214; Ga. Pac. Railway Co. v. Dooley, 86 Ga. 291, 12 S. E. 923, 12 L. R. A. 342. The instructions to section foremen not to ride on kegs or boxes on the front end of hand cars testified to by the roadmaster were not printed or in writing, but oral. It is true verbal or oral instructions given emToyés have been held to have the same binding effect as written rules. The A. & S. R. Co. v. Dorsey, 68 Ga. 228; Prather v. R. & D. R. Co., 80 Ga. 427, 9 S. E. 530, 12 Am. St. Rep. 263; Ga. Pac. R. R. Co. v. Mapp, 80 Ga. 631, 6 S. E. 24; McMillan v. Grand Trunk Ry. Co., 130 Fed. 827, 65 C. C. A. 165. But there are certain infirmities which inhere in oral instructions given as a rule of conduct. The language in which they are framed is passing, and not fixed. They are uncertain, and therefore open to constructions partaking of the bias and disposition of the employés. If carrying with them a disagreeable restriction, they are likely to be ignored and soon forgotten. At last, as here, when their existence, meaning, and import are called in question, when these have a vital bearing on the rights of litigants, it is left to the fallible and imperfect memory of witnesses to say that they existed, what they were and what they meant. The proof concerning the instructions given Shanklin was not of the conclusive nature that would justify the court in withdrawing the issue of contributory negligence from the jury.

In the court's general charge the jury was told that if Shanklin was riding on the front of his car sitting on a box in violation of instructions given him by the roadmaster, and if sitting in that position on the front of the car contributed to the accident resulting in his death, the plaintiff would not be entitled to recover, even though the other employés on the car behind Shanklin's were guilty of negligence in running into his car and causing him to be thrown from it. In view

of this instruction, it was not error for the court to decline to give two requested charges bearing on the same subject and giving expression to substantially the same rule. We find no error in the record.

The judgment of the Circuit Court is affirmed.